IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VOLT ASSET HOLDINGS TRUST XVI,

      Plaintiff,

vs.                                  Civ. No. 13-508 KG/KK

MARIE A. MARTINEZ a/k/a
MARIE MARTINEZ,
FELIX J. MARTINEZ a/k/a
FELIX JOE MARTINEZ PUBLIC TRUST,
and SOUTHWEST FINANCIAL SERVICES, INC.,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court upon Plaintiff Volt Asset Holdings Trust XVI's (Volt) Motion for Summary Judgment, Default Judgment, and for Order for Foreclosure Sale (Motion), filed July 29, 2015.  (Doc. 118).  Volt seeks a default judgment against Defendants Felix Joe Martinez Public Trust and Southwest Financial Services, Inc., summary judgment against *pro se* Defendants Marie and Felix Martinez (the Martinezes), and a judgment and order of foreclosure on the Martinezes' Mortgage, including the appointment of a special master and an award of reasonable attorneys' fees and costs.  The Martinezes filed a response on August 17, 2015, in which they (1) move to strike Melinda Girardeau's Affidavit and Verification, and her Affidavit Regarding Notice of Right to Cure Default, including the attachments to those affidavits, (2) move to dismiss the claims against Defendants Marie Martinez and Felix Joe Martinez Public Trust for lack of personal jurisdiction, and (3) oppose the motion for summary judgment.  (Doc. 121).  Volt filed an amended reply on November 1, 2016.  (Doc. 139).

Having considered the Motion, the accompanying briefs, and the relevant law and evidence, the Court (1) denies the Martinezes' request to strike Girardeau's affidavits, (2) denies the Martinezes' request to dismiss the claims against Defendants Marie Martinez and Felix Joe Martinez Public Trust for lack of personal jurisdiction, (3) denies Volt's request for an entry of default judgment against Defendants Felix Joe Martinez Public Trust and Southwest Financial Services, Inc., (4) grants summary judgment against the Martinezes, (5) defers entering an order of foreclosure, including the appointment of a special master, until the Court determines the interests of Defendants Felix Joe Martinez Public Trust and Southwest Financial Services, Inc. in the subject property, and (6) defers ruling on Volt's request for reasonable attorneys' fees and costs.

*A. Background*

    *1. The Complaint for Foreclosure (Complaint)*

This is a lawsuit to foreclose a mortgage on a Chimayo, New Mexico property apparently refinanced by the Martinezes.  On September 13, 2006, Oak Street Mortgage loaned the Martinezes $270,000.00.  (Doc. 1-1) at 8-10.  The Note, attached to the Complaint, contains an undated special indorsement from Oak Street Mortgage payable to the order of Oak Street Mortgage LLC.  *Id.* at 10.  The Note also contains an undated blank indorsement from Oak Street Mortgage LLC which states "pay to the order of."  *Id.*  Donna J. Parker signed both indorsements as an authorized signer for Oak Street Mortgage and Oak Street Mortgage LLC.  *Id.*

Oak Street Mortgage secured the Note with a Mortgage on the Chimayo property.  *Id.* at 11-26.  The Mortgage, attached to the Complaint, names Mortgage Electronic Registration Systems, Inc. (MERS) as a nominee for Oak Street Mortgage and for Oak Street Mortgage's

"successors, and assigns." *Id.* at 11.  The Mortgage was recorded with the Rio Arriba County Clerk on September 18, 2006. *Id.*

On June 1, 2012, MERS, as nominee for Oak Street Mortgage and its successors and assigns, assigned the Mortgage to HSBC Mortgage Services, Inc. (HSBC). *Id.* at 27.  This assignment, which is attached to the Complaint, was recorded with the Rio Arriba County Clerk on June 4, 2012. *Id.*

On March 19, 2013, HSBC filed the Complaint to foreclose on the Mortgage in state court.  HSBC brought the Complaint against the (1) Martinezes for defaulting on the Note, and (2) Felix Joe Martinez Public Trust and Southwest Financial Services, Inc., because they may claim an interest in the Chimayo property.  (Doc. 1-1) at 4-5, ¶¶ 14-15.  HSBC alleges that it was in possession of both the Note and the Mortgage at the time it filed the Complaint. *Id.* at 2, ¶ 8. On May 31, 2013, the Martinezes removed the state foreclosure action to this Court.  (Doc. 1).

*2. Post-Removal Actions*

On January 14, 2014, HSBC assigned the Mortgage to Volt.  (Doc.118-1). The Court, subsequently, held that HSBC had standing to bring this lawsuit and ordered that Volt be substituted for HSBC as HSBC's successor in interest.  (Docs. 97 and 100).  The Court further held that "once [HSBC] physically transferred the Note to Volt, it became holder of the Note with the right enforce both the Note and the Mortgage."  (Doc. 100) at 6.  Consequently, the Court concluded that "Volt has standing to proceed as Plaintiff." *Id.*

*B. Evidence Provided in Conjunction with the Motion*

*1. Girardeau's Affidavit and Verification*

Girardeau is a duly appointed representative of Caliber Home Loans, Inc. (Caliber), Volt's mortgage servicer.  (Doc. 118-1) at 1, ¶ 1.  Girardeau's affidavit is based on her

familiarity with the Note and knowledge of the "original books and records maintained" in Caliber's office. *Id.* The "books and records include data compilations of the [mortgage] payments … and are kept in the course of a regularly conducted business activity by Caliber Home Loans, Inc." *Id.* at 2-3, ¶ 1. Girardeau attests that it is Caliber's regular practice to make payment entries "at or near the time each payment is received or amounts are paid by persons with knowledge of the information being recorded." *Id.* at 2, ¶ 1. Because "[t]he original books of entry are contained in a computer database, which is voluminous when printed out and presented in its original form," Girardeau summarized those records. *Id.*

Girardeau also attests that the following documents attached to her Affidavit and Verification are "true and correct copies of the loan documents:" the Note (identical to the Note attached to the Complaint), the Mortgage (identical to the Mortgage attached to the Complaint), the assignment of the Mortgage from MERS to HSBC (identical to the assignment attached to the Complaint), the assignment of the Mortgage from HSBC to Volt, and the payoff amounts through July 21, 2015. *Id.* at 2-3, ¶ 2.

The Martinezes seek to strike this affidavit's attachments as impermissible hearsay.[1] The Federal Rules of Evidence, however, provide an exception to the rule against hearsay for business records. Federal Rule of Evidence 803(6) states that records of actions are admissible if a "custodian or another qualified witness" testifies that a

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business …;
> (C) making the record was a regular practice of that activity….

---

[1] Under Fed. R. Civ. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

and the party opposing the admission of the record "does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

As described above, Girardeau, as Caliber's representative, attests that she is familiar with the loan at issue and has knowledge of the books and records maintained by Caliber including data compilations created from payment entries made at or near the time payments were received.  The Court, therefore, finds that Girardeau is a custodian or qualified witness under Rule 803(6).  Additionally, Girardeau attests that it is Caliber's regular practice to keep these records of payments in the course of its regularly conducted business.  These attestations comply with the business records exception to the hearsay rule.

Nonetheless, the Martinezes dispute the trustworthiness of Girardeau's Affidavit and Verification.  To demonstrate that lack of trustworthiness, the Martinezes produced a copy of the Note purportedly sent by Caliber to the Martinezes in November 2013, after HSBC filed the Complaint in March 2013 and after Caliber began servicing the loan in June 2013.  (Doc. 36-2) at 2-7.  This copy of the Note, unlike the copy of the Note attached to the Complaint and to Girardeau's Affidavit and Verification, has a bar code at the bottom of the first page and does not show the indorsements.  Volt argues that the Court should disregard the November 2013 copy of the Note on the basis of hearsay and lack of authentication.

Although the Note produced in November 2013 contains statements not made at a trial or hearing, the Martinezes do not offer it "to prove the truth of the matter asserted in" that Note. Rather, the Martinezes offer the copy of the Note produced in November 2013 to show that it is different from the one Girardeau produced and, thus, demonstrates the untrustworthiness of Girardeau's Affidavit and Verification.  (Doc. 121-5) at 2, ¶ 3.  Hence, the copy of the Note produced in November 2013 is not hearsay.  *See* Rule 801(c).

Even so, under Fed. R. Evid. 901(a), the proponent of a document must authenticate it by producing "evidence sufficient to support a finding that the item is what the proponent claims it is." To determine whether a proponent has authenticated a document, the Court "must ascertain whether there is a reasonable probability that the evidence has not been altered in any material aspect …." *United States v. Brewer*, 630 F.2d 795, 802 (10th Cir. 1980). Here, the copy of the Note attached to the Complaint in March 2013 preceded the November 2013 production of the Note, and Girardeau attests and swears that the copy of the Note she produced, the exact same copy as that attached to the Complaint, is true and correct. In light of this time line and Girardeau's attestations, there is a reasonable probability the Note produced in November 2013 was materially altered, i.e., the indorsements were omitted and a bar code was added. The Court, therefore, does not accept the copy of the Note produced in November 2013 as authentic and will not consider it.

In sum, the Martinezes have not convinced the Court that Girardeau, in making her attestations regarding the authenticity of the loan documents, is somehow untrustworthy. Consequently, the loan documents attached to Girardeau's Affidavit and Verification are admissible under the business records exception to the hearsay rule. The Court will, therefore, not strike Girardeau's Affidavit and Verification and the attached loan documents.

  *2. The Note*

The Note states that, in return for a loan, the Borrower, the Martinezes, promises to pay the Lender, Oak Street Mortgage, $270,000.00, plus interest. (Doc. 118-3) at 4. In addition, the Note states that the Lender may transfer the Note. *Id.* "The Lender or anyone who takes this Note by transfer" is the "Note Holder." *Id.*

The Note further indicates that the interest is 9.450% per year and that this interest rate applies "both before and after any default…."  *Id.*  Monthly payments are $2,260.46 per month until the maturity date in 2036.  *Id.*  The Note also provides for late charges for overdue payments.  *Id.* at 5.  If the Borrower does "not pay the full amount of each monthly payment on the date it is due," the Borrower is in default.  *Id.*

The Note Holder may also send a defaulting Borrower written notice that, if the Borrower does not pay the overdue amount by a certain date, the Note Holder can require immediate payment of the unpaid principal and interest.  *Id.*  In that situation, the Note Holder has the right to be paid back "all of its costs and expenses in enforcing [the] Note to the extent not prohibited by applicable law."  *Id.*  Those expenses include "reasonable attorneys' fees."  *Id.*  The Note further states that a mortgage, dated the same date as the Note, protects the Note Holder from losses which might result if the Borrower does not adhere to the terms of the Note.  *Id.*  The Note also shows a special indoresement from Oak Street Mortgage to Oak Street Mortgage LLC and a blank indorsement from Oak Street Mortgage LLC.  *Id.* at 6.  The Martinezes do not dispute that they signed the Note.  *Id.*

### 3.  *The Mortgage*

 The Mortgage, as a security instrument, secures to the Lender, Oak Street Mortgage, repayment of the Note and the Borrower's, the Martinezes, performance of the Note and Mortgage.  (Doc. 1-1) at 13.  To do this, the Borrower mortgaged, granted, and conveyed the Chimayo property to "MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS…."  *Id.*  The Borrower agreed, pursuant to the Mortgage, to maintain the property.  *Id.* at 17.  In addition, the Borrower's obligations and liability are joint and several.  *Id.* at 20.

Should the Borrower fail to perform as agreed in the Mortgage, the "Lender may do and pay for whatever is reasonable or appropriate to protect Lenders' interest in the Property and rights under" the Mortgage, including, *inter alia*, "assessing the value of the Property," "appearing in court," and "paying reasonable attorneys' fees." *Id.* at 18. "Any amounts disbursed by Lender" to protect its interest in the property and rights under the Mortgage "shall become additional debt of" the Borrower secured by the Mortgage. *Id.* "These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment." *Id.*

Should the Borrower default on the Note,

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lenders' interest in the Property and rights under this [Mortgage], including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this [Mortgage] to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this [Mortgage] or by Applicable Law.

*Id.* at 21. Upon default, the Lender can accelerate payment of the Note provided the Lender gives the Borrower notice (1) of the default, (2) of what can be done to cure the default, (3) of a date (more than 30 days from the date of the notice) to cure the default, and (4) that failure to cure the default by the specified date may result in acceleration of payment of the Note, foreclosure, and sale of the property. *Id.* at 23. If the default is not cured by the specified date, the Lender may require immediate payment of the Note in full "without further demand and may foreclose" the Mortgage "by judicial proceeding." *Id.* In that event, Lender is "entitled to collect all expenses incurred in pursing the remedies provided in [the Mortgage], including, but not limited to, reasonable attorneys' fees and costs of title evidence." *Id.*

The Borrower has the right to discontinue the enforcement of the Mortgage by paying the Lender all sums owed including "expenses incurred in enforcing [the Mortgage], including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under [the Mortgage]…."  *Id.* at 22.  The Lender may require the Borrower to pay those sums and expenses with certified funds instead of with cash.  *Id.*

The Mortgage further states that the Note and Mortgage "can be sold one or more times without prior notice to Borrower" and might result in a change in the servicer, the entity that collects the payments due under the Mortgage and performs other mortgage loan servicing obligations.  *Id.* at 22.

The Martinezes duly signed the Mortgage and the Mortgage was recorded with the Rio Arriba County Clerk.  *Id.* at 24-25.

### 4.  The Assignment of the Mortgage from MERS, as Nominee for Oak Street Mortgage and its Successors and Assigns, to HSBC

In June 2012, MERS, as nominee for Oak Street Mortgage and its successors and assigns, transferred the Mortgage to HSBC.  (Doc. 1-1) at 27.  This assignment was recorded with the Rio Arriba County Clerk.  *Id.*

### 5.  The Assignment of the Mortgage from HSBC to Volt

In January 2014, HSBC then assigned the Mortgage to Volt.  (Doc. 118-1) at 7.  The assignment document refers to a September 31, 2006, mortgage instead of the September 13, 2006, Mortgage, but, otherwise, clearly references the Chimayo property.  *Id.*  The misidentification of the date of the Mortgage is merely a scrivener's error which does not invalidate the assignment of the Mortgage to Volt.  *See F.D.I.C. v. Hennessee*, 966 F.2d 534, 538 (10th Cir. 1992) (finding that scrivener's error in mortgage document did not create genuine

issue of material fact as to what mortgage secured).  *See also Veasley v. Fed. Nat. Mortg. Ass'n (FNMA)*, 623 F. App'x 290, 297 (6th Cir. 2015), *cert. denied sub nom. Veasley v. Fed. Nat. Mortg. Ass'n*, 136 S. Ct. 1676 (2016) ("to succeed on her claim, Veasley must show that she was prejudiced by the defendants' failure to include the correct metes-and-bounds description in the mortgage assignment.").

   *6.  Karla K. Poe's Affidavit of Possession of Original Note*

   Karla K. Poe, an attorney at Rose L. Brand & Associates, P.C. (RLBA), which represents Volt and previously represented HSBC in this case, submitted an affidavit regarding the possession of the original Note.  (Doc. 118-3) at 1, ¶¶ 1 and 2.  Poe attests that based on personal knowledge or "knowledge from the records of RLBA, kept in the ordinary course of its regularly conducted business and recorded at or near the time of the events they describe and made by persons with knowledge of the facts or from information transmitted by a person with knowledge of the facts," RLBA first possessed the original Note, indorsed in blank, as counsel for HSBC, beginning in February 28, 2013, and has continued to possess the original Note.  *Id*. at 1-2, ¶¶ 3 and 4.  *See also id.* at 3 (document from HSBC to RLBA dated February 15, 2013, noting transmittal of original Note and Mortgage to RLBA).  Poe attests that RLBA now possesses the original Note, indorsed in blank, for Volt.  *Id.* at 2, ¶ 5.

   *7.  Notices to Cure Default*

   In July 2012, the Martinezes received from HSBC a Notice of Right to Cure Default. (Doc. 4-1) at 13.  In that Notice of Right to Cure Default, HSBC states that the Martinezes had failed to make payments on the Note "that were due on or after 03/01/2011."  *Id.*  HSBC further states that the Martinezes could cure this default by paying "$49,964.64, in the form of certified funds," no later than August 14, 2012.  *Id.*

Girardeau filed an Affidavit Regarding Notice of Right to Cure Default to authenticate another Notice of Right to Cure Default which HSBC purportedly mailed to the Martinezes in November 2012. (Doc. 118-4) at 1-5. HSBC states in that Notice of Right to Cure Default that the Martinezes now needed to pay "60,347.56, in the form of certified funds," by December 11, 2012, to cure their default on the Note. *Id.* at 5. HSBC also indicates that failure to cure the default could lead to a foreclosure on the Mortgage. *Id.*

The Martinezes claim not to have received the November 2012 Notice of Right to Cure Default. (Doc. 121-2) at 2, ¶ 2. They also move to strike Girardeau's Affidavit Regarding Notice of Right to Cure Default for lack of credibility, inadmissible hearsay, and for lack of evidence showing that the Martinezes received the November 2012 Notice of Right to Cure Default. For the same reasons given with respect to Girardeau's Affidavit and Verification, the November 2012 Notice of Right to Cure Default attached to Girardeau's Affidavit Regarding Notice of Right to Cure Default meets the business records exception to the hearsay rule under Rule 803(6). Moreover, Girardeau's attestations in conjunction with the physical appearance of the November 2012 Notice of Right to Cure Default are sufficient to authenticate the November 2012 Notice of Right to Cure Default. Because Girardeau does not purport to attest that the Martinezes actually received the November 2012 Notice of Right to Cure Default, the Court accepts that the Martinezes did not receive the November 2012 Notice of Right to Cure Default. Nevertheless, for the above reasons, the Court will not strike Girardeau's Affidavit Regarding Notice of Right to Cure Default and its attached November 2012 Notice of Right to Cure Default.

*8. Offers to Pay the Amount Due*

In April and May 2013, Defendant Felix Joe Martinez offered to pay HSBC the amounts due on the Note in "cash." (Doc. 121-5) at 9-10; (Doc. 121-6) at 7-8. On May 22, 2013, HSBC responded that it would not accept Defendant Joe Martinez's offer and that the payment must be in the form of certified funds. (Doc. 121-6) at 15. HSBC included an account payment history and itemized payoff quote beginning with the amount due on March 1, 2011. *Id.*

The Court notes that the offers to pay the amount due in cash do not comply with the requirement in the Notices of Right to Cure Default to pay with certified funds. As the Mortgage states and as the Martinezes agreed, the Lender may choose to accept only certified funds. Furthermore, the noncompliant offers to pay are not material to the underlying issue in this case: whether the Martinezes are currently in default on the Note and Mortgage and owe money under the Note. *See* Rule 56(a) (non-movant must show "genuine dispute as to any material fact…."). For the foregoing reasons, the Court will not consider the offers to pay in considering the Motion.

*9. Amounts Due*

Caliber provided an Account Summary as of July 20, 2015, with a payment due date beginning on March 1, 2011. (Doc. 118-1) at 10-11. The principal owed in March 2011 was $261,718.39. *Id.* at 10. Together with the principal, interest, insurance, taxes, the costs of drive-by inspections, an "occupy inspection" cost, costs for a foreclosure broker price opinion (FCL BPO), and late charges (which were frozen on December 19, 2012), the total amount due on July 21, 2015, without reasonable attorneys' fees and costs, was $393,444.71. *Id.* at 10-11.

The Martinezes also produced a payment history from Caliber which Caliber attached to a November 2013 letter to the Martinezes. (Docs. 36-2 to 36-4). This payment history seems to

indicate that the Martinezes did not fully pay their monthly Note payments beginning in February 2011 and finally stopped paying altogether after May 26, 2011.  (Doc. 36-4) at 7-8. This payment history only reports activity through October 10, 2013.  *Id.* at 11.

The Martinezes further purport to have produced a payment history from HSBC which they claim contradicts the November 2013 payment history from Caliber.  (Doc. 121-5) at 6-8. The purported HSBC payment history, however, is undated and does not contain any indication that HSBC generated the payment history, i.e., there is no label or information on the payment history to suggest who generated the payment history.  Also, the first page is missing.  In other words, the Martinezes have not authenticated the HSBC payment history as required under Rule 901.  *See* Rule 901(a) (proponent of evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").  Even so, the relevance of the document is questionable since it appears to cover only the time period from 2007 to 2010, well before the alleged default in March 2011.  (Doc. 121-5) at 6-8.  The Court will, therefore, not consider this purported HSBC payment history.

10. *Mortgage Servicing Documents*

The Martinezes did not sign a Servicing Disclosure Statement provided by Oak Street Mortgage in 2006.  (Doc. 121-7) at 4.  The Martinezes also did not receive an October 23, 2006, notice of transfer of servicing rights from GMAC to HSBC until May 2013.  *Id.* at 2, ¶ 3, and at 5.  The Martinezes claim that these actions violate several federal laws, namely, the Truth in Lending Act, the Uniform Commercial Code, and the Real Estate Settlement Procedures Act. The Martinezes have not previously alleged these violations of federal law as counterclaims in their amended answer.

In the Tenth Circuit, raising a new claim, or in this case new counterclaims, in a response to a motion for summary judgment is construed as a request to amend the party's pleading, i.e., to either amend the complaint to add new claims or to amend the answer add new counterclaims. *See Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (in context of new claims raised in response, Tenth Circuit held that "our cases interpret the inclusion of new allegations in a response to a motion for summary judgment, as a potential request to amend the complaint."). Federal Rule of Civil Procedure 15(a)(2), which governs amendments to pleadings, provides that the Court must "freely give leave when justice so requires." Nevertheless, it is proper to deny leave to amend for untimeliness. *See Durham v. Xerox Corp.,* 18 F.3d 836, 840 (10th Cir.1994) (in discussing whether to amend complaint, Tenth Circuit held that "if there has been undue delay on the part of the plaintiff in raising the claim, the district court may properly deny the motion as untimely."). When determining whether a newly raised claim or counterclaim is untimely under Rule 15(a), the Court "focuses primarily on the reasons for the delay." *Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1206 (10th Cir. 2006). "[D]enial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'" *Id.* (quoting *Frank v. U.S. West,* 3 F.3d 1357, 1365–66 (10th Cir.1993)). Here, even if the Court were to construe the Martinezes' arguments as requests to once more amend their answer in order to add counterclaims, the Martinezes offer no explanation for the delay of nearly four years to raise these new counterclaims. Thus, the Court will not allow the Martinezes to amend their answer again to include new federal counterclaims. The Court will, therefore, not consider those counterclaims now.

### 11. Defendant Felix Joe Martinez's Affidavits

Defendant Felix Joe Martinez submits several affidavits in support of the response to the Motion.  The affidavits include impermissible conclusory statements, statements not based on personal knowledge, legal argument, and immaterial information such as an accounting of expenses to maintain the Chimayo property.  *See* Fed. R. Civ. P. 56(c)(4) (stating that affidavit used to oppose motion for summary judgment "must be made on personal knowledge…."); *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) ("at the summary judgment stage, 'statements of mere belief' in an affidavit must be disregarded."); *G.F. Co. v. Pan Ocean Shipping Co.*, 23 F.3d 1498, 1507 n. 6 (9th Cir. 1994) (acknowledging purpose of affidavits is to present "evidentiary matter" not legal argument);  *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("conclusory and self-serving affidavits are not sufficient" and "factual disputes about immaterial items are irrelevant.").  While the Court will not strike Defendant Felix Joe Martinez's affidavits for not complying with Rule 56(c)(4), the Court will disregard those portions of the affidavits that do not comply with that Rule.  *See Jones v. Barnhart,* 349 F.3d 1260, 1270 (10th Cir. 2003) (affirming denial of motion to strike when district court acknowledged "difficulty in striking an entire affidavit" and "instead relied on the declarations to the extent that they contained relevant and admissible material, ignoring inadmissible and irrelevant statements.").

## C. Discussion

### 1. Personal Jurisdiction over Defendant Marie Martinez

The Martinezes argue that the Court should dismiss the claims against Defendant Marie Martinez because HSBC did not properly serve her and, thus, the Court does not have personal jurisdiction over her.  Assuming, without deciding, that Defendant Marie Martinez was not

properly served, the Court notes that a defendant waives the defense of lack of personal

jurisdiction if the defendant does not raise that defense in the answer or in a pre-answer Fed. R.

Civ. P. 12 motion to dismiss.  *Travelers Cas. & Sur. Co. of Am. v. Unistar Fin. Serv. Corp.*, 35 F.

App'x 787, 789 (10th Cir. 2002) ("Rule 12 not only contemplates the lodging of certain defenses

[such as lack of personal jurisdiction] at the earliest point in a lawsuit, it mandates a waiver of

those defenses if not presented at the first available opportunity."  (citing *United States v. 51*

*Pieces of Real Property, Roswell, N.M.,* 17 F.3d 1306, 1314 (10th Cir.1994); *Fed. Deposit Ins.*

*Corp. v. Oaklawn Apartments*, 959 F.2d 170, 175 (10th Cir. 1992))).  Defendant Marie Martinez

has not raised the defense of lack of personal jurisdiction in either the amended answer (Doc.

106) or any Rule 12 motion to dismiss.  Hence, Defendant Marie Martinez has waived her

defense of lack of personal jurisdiction.

   *2.  The Motion for Default Judgment Against Defendants Felix Joe Martinez Public Trust*
   *and Southwest Financial Services, Inc.*

   In seeking to obtain full relief in this Motion for Summary Judgment, Volt seeks a default

judgment against Defendants Felix Joe Martinez Public Trust and Southwest Financial Services,

Inc.  The Martinezes, however, contend that Defendant Felix Joe Martinez Public Trust does not

exist and that there is no evidence that Defendant Felix Joe Martinez is authorized to accept

service on behalf of Defendant Felix Joe Martinez Public Trust.  Accordingly, the Martinezes

assert that the Court lacks personal jurisdiction over Defendant Felix Joe Martinez Public Trust

and so the Court should dismiss the claims against it.  To the extent that the Martinezes are

attempting to legally represent Defendant Felix Joe Martinez Public Trust, the Court notes that

under the Local Rules an entity, like a trust, can only "be represented by an attorney authorized

to practice before this Court."  D.N.M. LR-Cv 83.7.  Because the Martinezes cannot represent

Defendant Felix Joe Martinez Public Trust, the Court denies the Martinezes' request to dismiss the claims against Defendant Felix Joe Martinez Public Trust for lack of personal jurisdiction.

The responsibility of determining the existence of a defendant and how to properly serve that defendant squarely falls on Volt.  *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) ("plaintiff has the burden of establishing personal jurisdiction … and of establishing the validity of the service of process….").  The Court expects that, if the facts warrant, Volt will voluntarily dismiss the claims against Defendant Felix Joe Martinez Public Trust.

Notwithstanding the foregoing potential issues with Defendant Felix Joe Martinez Public Trust, the Court cannot enter a default judgment against either Defendant Felix Joe Martinez Public Trust or Defendant Southwest Financial Services, Inc. until the Clerk first enters a default against those Defendants.  *See, e.g., Garrett v. Seymour*, 217 F. App'x 835, 838 (10th Cir. 2007) (holding that Clerk's entry of default "prerequisite for the entry of a default judgment under Rule 55(b)(1)"); *Rowley v. Morant*, 276 F.R.D. 669, 670 (D.N.M. 2011) ("clear weight of authority holds that a party *must* seek entry of default by the clerk before it can move the court for default judgment.").  Although Volt states that it requested an entry of default from the Clerk, the Clerk has not done so.  Hence, the Court cannot entertain, at this time, Volt's motion to enter a default judgment against Defendants Felix Joe Martinez Public Trust and Southwest Financial Services, Inc.

### 3. The Motion for Summary Judgment

Volt argues that it has presented undisputed evidence to support, as a matter of law, *prima facie* cases for summary judgment on the Note and on the claim to foreclose on the Mortgage.  Volt further argues that the Martinezes have failed to show that their eight affirmative

defenses can defeat those *prima facie* cases for summary judgment.  The Martinezes, on the other hand, dispute that Volt can show a *prima facie* case for summary judgment on either the Note or the claim to foreclose on the Mortgage.  The Martinezes also assert that their affirmative defenses defeat summary judgment.

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).[2]  When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted).  The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings.  *Bacchus Indus., Inc.*, 939 F.2d at 891.

When the movant also challenges the non-movant's affirmative defense and the movant has already met its summary judgment burden, i.e., the movant has made a *prima facie* case for granting summary judgment, the non-movant, who bears the burden of persuasion at trial on the affirmative defense, must "present admissible evidence legally sufficient to sustain a finding favorable to [it] on each element of that defense."  *Serna v. Law Office of Joseph Onwuteaka,*

---

[2]Rule 56 was amended effective December 1, 2010, but the standard for granting summary judgment remains unchanged.

*P.C.*, 614 F. App'x 146, 154 (5th Cir. 2015), *cert. denied,* 136 S. Ct. 1160 (2016) (citation

omitted).  "Correspondingly, the movant 'should be able to obtain summary judgment simply by

disproving the existence of any essential element of the opposing party's claim or affirmative

defense.'"  *Id.* (quoting *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986)).

> ### a.  Whether Volt has Demonstrated a Prima Facie Case for Summary Judgment on the Note

Volt argues first that it is entitled to summary judgment on the Note, as a matter of law,

because the undisputed evidence shows that the Martinezes defaulted on the Note they signed,

which Volt now holds.  "[A] cause of action against the maker of a promissory note is

established if the plaintiff proves that: (1) plaintiff is the holder of the note on which [the

plaintiff] sues; (2) defendant signed the note; (3) the note became due and payable; and (4)

defendant has not paid the amount due and owing."  *F.D.I.C. v. Lockhaven Estates, LLC*, 918 F.

Supp. 2d 1209, 1238 (D.N.M. 2012) (citation omitted).

> ### (1)  Does Volt Hold the Note?

Volt has presented evidence that it currently holds the Note and that the Note is

physically located at RLBA's office.  The Martinezes argue that Volt does not hold the Note

because there is no evidence that the Note was actually transferred to either HSBC or Volt, or

that Volt paid consideration for the Note.  Without this transfer, the Martinezes contend that the

Note was not negotiated.  *See* NMSA 1978, § 55-3-205(b) (1993 Repl. Pamp.) ("When indorsed

in blank, an instrument becomes payable to bearer and may be negotiated by transfer of

possession alone….").  The Martinezes, however, have not provided evidence to contradict Poe's

affidavit that RLBA held the original Note for HSBC and now holds the original Note for Volt.

Moreover, the Martinezes have not provided any legal authority that requires the "transfer" of

the Note occur by some physical act other than mere possession by a bailee[3] for the current note bearer. *See Phillips v. Calhoun*, 956 F.2d 949, 953 (10th Cir. 1992) (declining "to consider the matter, because … Plaintiff's appellate position has not been even minimally supported by legal argument or authority…"); D.N.M. LR-Cv 7.3(a) ("response … must cite authority in support of the legal positions advanced."). The Martinezes have also not provided any legal support for their contention that a transfer necessarily requires proof of consideration. The Martinezes, therefore, have not demonstrated a genuine dispute of fact as to whether Volt holds the Note.

### (2) Did the Martinezes Sign the Note?

The Martinezes admit that they signed the Note, but dispute "that they received anything of value in exchange for the note or that the original 'lender' ever actually funded the Note with its own assets, credit or anything of value." (Doc. 121) at 10. Obviously, the value the Martinezes received from the Note was a loan of $270,000.00, and a reasonable jury, viewing the evidence in favor the Martinezes, could not find otherwise. Additionally, where Oak Street Mortgage, the original lender, obtained the money for the loan is not material to whether the Martinezes must, nevertheless, honor the terms of the Note. The Martinezes have not shown a genuine dispute of fact as to whether they signed the Note.

### (3) Is the Note Due and Payable?

Volt has presented evidence that the Martinezes ceased to fully make payments under the Note beginning in March 2011, thereby defaulting on the Note and making those payments due and payable. The Martinezes seem to claim that they are not obligated to make payments on the Note because Oak Street Mortgage did not loan the Martinezes any of its own money. As

---

[3] A bailee is: "Someone who receives personal property from another, and has possession of but not title to the property. • A bailee is responsible for keeping the property safe until it is returned to the owner." BAILEE, *Black's Law Dictionary* (10th ed. 2014).

already observed, where Oak Street Mortgage obtained the funds to make the loan to the

Martinezes is irrelevant to the Martinezes' obligations to pay the loan under the terms of the

Note.

   The Martinezes further argue, again, that Oak Street Mortgage did not provide anything

of value to the Martinezes and so they are not obligated to make payments pursuant to the Note.

A loan of $270,000.00 is certainly something of value.  Moreover, the fact that the Martinezes

had made the required payments for several years prior to March 2011 undermines the

Martinezes' argument that they do not have to make the payments due under the Note.  The

Martinezes have not demonstrated a genuine dispute of fact as to whether the Note became due

and payable.

### (4)  Have the Martinezes Paid the Amount Due and Owing?

   Volt has presented evidence that the Martinezes have not paid the full amounts due under

the Note since March 2011.  The Martinezes contend that no amounts are due from them because

they are not in default, presumably, for the reasons described above.  However, the undisputed

evidence shows that the Martinezes are obligated to pay under the Note, the Martinezes have not

fully done so since March 2011, and that they finally ceased paying any payments after May

2011.  Under the undisputed terms of the Note, the Martinezes have been in default since March

2011.  Considering this undisputed evidence, the Martinezes have not demonstrated a genuine

dispute of fact as to whether they have not paid the amount due and owing under the Note.

   The Martinezes also contend that the amounts Volt claims are due and owing are

inaccurate.  The Martinezes attempt to prove this contention with Caliber's November 2013

payment history which ends in October 2013, and with the unauthenticated HSBC payment

history which apparently goes only through 2010.  The Martinezes further assert, without any

supporting evidence, that Volt did not incur the fee charges listed in Caliber's July 2015 Account

Summary.  *See* (Doc. 118-1) at 14-15.  Excluding the unauthenticated HSBC payment history, a

reasonable jury viewing the incomplete November 2013 payment history in the light most

favorable to the Martinezes could not find that Caliber's updated July 2015 Account Summary is

somehow inaccurate.  Hence, the Martinezes have not carried their burden of showing a genuine

dispute of fact as to the amounts due from them.

*(5)  Conclusion*

Viewing the evidence and reasonable inferences therefrom in the light most favorable to

the Martinezes, the Court finds no genuine issue of material fact with respect to the Martinezes'

failure to make payments as required by the terms of the Note.  The Court, thus, determines that

Volt has, as a matter of law, established a *prima facie* case for summary judgment on the Note.

*b.  Whether Volt has Demonstrated a Prima Facie Case for Summary Judgment
on the Claim to Foreclose on the Mortgage*

Volt next argues that there is no genuine dispute that, as a matter of law, it has

established a *prima facie* case for summary judgment on the claim to foreclose on the Mortgage.

It is well-established in New Mexico that when a mortgagor defaults on a note secured by a

mortgage a mortgagee may foreclose on the mortgage.  *Keppler v. Slade,* 1995–NMSC–035, ¶ 7,

119 N.M. 802 ("upon default by the mortgagor, a mortgagee has independent remedies which he

or she may pursue.  The mortgagee may sue either on the note or foreclose on the mortgage, and

may pursue all remedies 'at the same time or consequently.'" (citations omitted)).  Furthermore,

the entity or person who has the right to enforce a note necessarily has the right to foreclose on

the mortgage which secures the note.  *Simson v. Bilderbeck, Inc.*, 1966-NMSC-170, ¶¶ 13-14, 76

N.M. 667 (holding that one who has right to enforce note can foreclose on mortgage).  Here,

Volt argues that it is undisputed that (1) it holds the Note and, therefore, it has the right to

22

enforce the Note as a matter of law, (2) MERS, as nominee for Oak Street Mortgage and its successors and assigns, assigned the Mortgage to HSBC which then assigned the Mortgage to Volt, (3) those assignments were recorded with the Rio Arriba County Clerk, and (4) the Martinezes have defaulted on the Note.  Accordingly, Volt asserts that it has the right to foreclose on the Mortgage.

Once more, the Martinezes argue that Volt does not have a right to enforce the Note because Oak Street Mortgage did not give anything of value to the Martinezes.  The undisputed evidence shows that Oak Street Mortgage loaned the Martinezes $270,000.00 and that the Martinezes, in fact, acknowledged that loan by making payments pursuant to the Note for several years.  As the Court decided, *supra*, the assertion that the Martinezes did not receive anything of value from Oak Street Mortgage has no merit.

Next, the Martinezes argue that the blank indorsement would make it impossible for anyone to know who has a right to enforce the Note and, thus, foreclose on the Mortgage. However, it is undisputed that both HSBC and Volt recorded the Mortgage assignments with the Rio Arriba County Clerk so that any interested party would know who held an interest in the Chimayo property and could foreclose on the Mortgage.

The Martinezes further dispute, as before, that the Note was not actually delivered to Volt.  As discussed above, the Court finds that it is undisputed that Volt possesses the Note, which is located at the offices of RLBA.

Finally, the Martinezes challenge the Mortgage assignments.  The Martinezes first question how MERS, as a nominee for Oak Street Mortgage, could assign the Mortgage to HSBC when Oak Street Mortgage had indorsed the Note to Oak Street Mortgage LLC.  The Martinezes, however, neglect to mention that, under the Mortgage, MERS was acting as a

nominee for Oak Street Mortgage and for Oak Street Mortgage's "successors and assigns," which would have included Oak Street Mortgage LLC.

Second, the Martinezes question Donna J. Parker's authority to indorse the Note on behalf of either Oak Street Mortgage or Oak Street Mortgage LLC. The Court already addressed the Martinezes concerns about Parker in a Memorandum Opinion and Order which concluded that HSBC, as holder of the Note, indorsed in blank, and assignee of the Mortgage, had standing to file this lawsuit. (Doc. 97) at 4-5, and 8. The Martinezes, on the other hand, have not provided any evidence that Parker was not an authorized signer for both Oak Street Mortgage and Oak Street Mortgage LLC.

Third, the Martinezes contend that the assignment of the Mortgage from HSBC to Volt by Jason Adams on behalf of "HSBC Mortgage Services, Inc., by Caliber Home Loans, Inc., as its Attorney in Fact" is inadmissible hearsay because there is no evidence that Caliber was acting on behalf of HSBC. The Court previously decided that Adams could sign the Mortgage assignment on behalf of HSBC when it substituted Volt as Plaintiff. (Doc. 100) at 6-10. Additionally, the assignment is not inadmissible hearsay because, as discussed earlier, it qualifies as a business record under the hearsay exception pursuant to Girardeau's Affidavit and Verification.

Finally, the Martinezes seem to argue that Adams lacked "first hand knowledge of any transfer by delivery of the Note to" Volt because RLBA retained the Note for both HSBC and Volt, respectively. (Doc. 121) at 15. The relevant issue, in this case, is whether Volt now holds the Note. The undisputed evidence shows that RLBA has the Note as bailee for Volt. Moreover, the Martinezes have not presented any evidence to show that Adams did not know that RLBA would possess the Note as bailee for Volt.

In sum, viewing the evidence and reasonable inferences therefrom in the light most favorable to the Martinezes, the Court determines that the Martinezes have not demonstrated a genuine issue of material fact with respect to Volt's right to foreclose on the Mortgage based on the Martinezes' default on the Note.  The Court, therefore, determines that Volt has, as a matter of law, established a *prima facie* case for summary judgment on the claim to foreclose on the Mortgage.

### c. The Martinezes' Affirmative Defenses to Foreclosure

#### (1) Standing

The Martinezes argue that Volt lacks standing because it is not in possession of the Note nor was the Note physically transferred from HSBC to Volt.  As discussed previously, the undisputed evidence shows that Volt is the holder of the Note and RLBA possesses the Note as Volt's bailee.  Also, the Martinezes have not provided legal support for the notion that HSBC must have physically transferred the Note to Volt in order for Volt to hold the Note.

The Martinezes further argue that Volt, as a trust, lacks the capacity to sue, i.e., Volt is not a real party in interest, because its trustee did not sue on Volt's behalf.  The Court already held that the real party interest rule, Fed. R. Civ. P. 17, does not apply when an interest has been transferred after the filing of the lawsuit, as happened with Volt in this case.  (Doc. 100) at 4 (citing Wright, Miller & Kane, 7C *Federal Practice & Procedure:  Civil 3d* § 1958 at 691-92).  Instead, Fed. R. Civ. P. 25(c), the rule on substituting parties, applies.  *Id.; see also Citibank, N.A. v. Martinez*, No. 33,945, 2016 WL 2855523, at ¶¶ 14-15 (N.M. Ct. App. 2016) (finding same with respect to analogous state rules of civil procedure).  Under Rule 25(c), if a plaintiff transfers an interest, the plaintiff can continue the lawsuit notwithstanding the transfer, or, as in this case, the Court can exercise discretion to substitute the successor in interest to facilitate

litigation.  (Doc. 100) at 3 and 9.  If the Court had not granted the motion to substitute Volt as Plaintiff, Volt, the trust, would still be the successor in interest entitled to enforce the Mortgage.

Even if one considers the Martinezes' real party in interest argument, that argument is without merit.  In New Mexico, Rule 1–017(A) NMRA states that "[e]very action shall be prosecuted in the name of the real party in interest; but … [a] trustee of an express trust … *may sue* in that person's own name without joining the party for whose benefit the action is brought [.]" (Emphasis added).  The language in Rule 1-017(A) does not mandate that a trustee prosecute a case on behalf of a trust.  In fact, the New Mexico Supreme Court has held that a trust, as opposed to a trustee, can have standing to bring a lawsuit.  *McNeill v. Burlington Res. Oil & Gas Co.*, 2008-NMSC-022, ¶ 37, 143 N.M. 740 ("the Black Trust has standing.").

The Martinezes further argue that Volt could not have been injured by the Martinezes' failure to make payments on the Note since the Martinezes did not receive anything of value from Oak Street Mortgage.  The Martinezes, thus, conclude that this is another ground for finding that Volt lacks standing.  As before, the Court rejects the contention that the Martinezes did not receive anything in value from Oak Street Mortgage when Oak Street Mortgage loaned the Martinezes $270,000.00.

In conclusion, the Martinezes have not produced evidence which demonstrates that HBSC did not transfer the Mortgage to Volt and that Volt is not the current holder of the Note. The Martinezes have also not convinced the Court that, as a matter of law, it should not have substituted Volt as Plaintiff.  The Martinezes have, therefore, not demonstrated that the affirmative defense of lack of standing applies.

*(2) Fraud*

The first issue with the Martinezes' fraud affirmative defense is whether the Martinezes complied with Fed. R. Civ. P. 9(b). This rule states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The purpose of Rule 9(b) is to afford fair notice of fraud claims "and the factual grounds supporting those claims." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016) (citation omitted). In this case, the Martinezes simply allege in their amended answer fraud "due to material misrepresentations prior to and during the present action." (Doc. 109) at 6, ¶ 2. This allegation does not state what particular factual circumstances constitute fraud and, therefore, does not provide fair notice to Volt of the fraud affirmative defense. In fact, the Martinezes admit they did not plead fraud with particularity. (Doc. 121) at 18 ("Notwithstanding any failure on their part to previously plead fraud with particularity…."). For this reason alone, the fraud affirmative defense fails.

Even so, Volt argues that the Martinezes have not presented facts to show that they are entitled to an affirmative defense of fraud. In New Mexico, "[f]raud consists of a misrepresentation of fact, known by the maker to be untrue, made with the intent to deceive and to induce the other party to act on it, and on which the other party relies to his detriment." *Meiboom v. Carmody*, 2003-NMCA-145, ¶ 13, 134 N.M. 699. "A failure to disclose information can constitute fraud." *Id.* Assuming arguendo the Martinezes have somehow met the first, second, and fourth elements of fraud, the Martinezes have failed to produce evidence which demonstrates that Volt or its predecessors in interest intended to deceive the Martinezes. The undisputed facts, on the other hand, show that (1) the Note was lawfully transferred and the Mortgage lawfully assigned to Volt, and (2) the Martinezes owe money on the Note which

entitles Volt to foreclose on the Mortgage.  Under these circumstances, the Martinezes have not established an affirmative defense based on fraud.

### (3) Contributory Negligence

As Volt notes, New Mexico has abolished contributory negligence as a complete affirmative defense.  *Scott v. Rizzo*, 1981-NMSC-021, ¶ 5 n.1, 96 N.M. 682 ("doctrine of contributory negligence no longer applies as a complete bar to recovery.").  The Martinezes concede that "contributory negligence might not be the proper defense…."  (Doc. 121) at 20.  In fact, contributory negligence is an affirmative defense to a claim of negligence, which is not a claim in this case.  *Scott*, 1981-NMSC-021, ¶ 1 ("defendants denied negligence and affirmatively alleged contributory negligence on the part of plaintiff.").  For the foregoing reasons, the Martinezes do not have a contributory negligence affirmative defense.

### (4) Illegality

The Martinezes argue that the "illegality" affirmative defense mirrors their fraud affirmative defense.  For the same reasons the Court rejected the fraud affirmative defense, the Court determines that the Martinezes have not shown an affirmative defense based on "illegality."

### (5) Failure of Consideration

The Martinezes again claim that Oak Street Mortgage did not give them anything of value or consideration when it executed the Note and that they, therefore, are not obligated to pay anything under the Note.  As the Court stated previously, the consideration the Martinezes received from Oak Street Mortgage was a loan of $270,000.00.  The Martinezes have failed to demonstrate a failure of consideration affirmative defense.

### (6)  Estoppel

The Martinezes contend that since they adequately pled fraud they have adequately pled

and shown estoppel.  "The essential elements of equitable estoppel are (1) knowing

misrepresentation or concealment of a material fact or facts; (2) made by the party to be estopped

with the intention or expectation that the other party will act thereon; and (3) detrimental reliance

without knowledge of the true facts by the party asserting estoppel."  *Mayfield Smithson*

*Enterprises v. Com-Quip, Inc.*, 1995-NMSC-034, ¶ 9, 120 N.M. 9.  As with the Martinezes'

fraud affirmative defense, the Martinezes have failed to provide any evidence to support the

intent or expectation element of estoppel.  Moreover, the Martinezes have not presented any

evidence suggesting that HSBC or Volt knowingly misrepresented or concealed a "material" fact

that somehow led the Martinezes to default on the Note.  Consequently, the Martinezes have not

shown an estoppel affirmative defense.

### (7)  Waiver

Although the Martinezes raise a waiver affirmative defense in their amended answer,

they do not argue in their response to the Motion that waiver should bar Volt's claims.  Hence,

the Martinezes have abandoned that affirmative defense, or, at the very least, not established a

waiver affirmative defense.

### (8)  "Failure of Ratification of Commencement"

The Martinezes base this affirmative defense on their contention that HSBC did not have

standing and that Volt, as HSBC's successor in interest, therefore, could not maintain this

lawsuit.  The Martinezes further argue that Volt, as a trust subject to Delaware law, cannot assert

any rights.  As discussed above, the Court has already ruled that HSBC had standing to bring this

lawsuit and that Volt, as a trust, can be substituted as the Plaintiff.  Furthermore, the Martinezes

do not explain how Delaware law would affect Volt's ability to be substituted as the Plaintiff when HSBC transferred the Note and its interest in the Mortgage to Volt.  The Martinezes do not provide any legal justification or evidence to support the "failure of ratification of commencement" affirmative defense.

> d. *Conclusion*

Although Volt is entitled to summary judgment against the Martinezes on the Note and the claim to foreclose on the Mortgage, the Court cannot enter an order of foreclosure until the Court determines whether and to what extent Defendants Felix Joe Martinez Public Trust and Southwest Financial Services, Inc. have interests in the Chimayo property.  The Court, therefore, defers entry of an order of foreclosure until the Court makes those determinations, whether through entry of default judgments or otherwise.

Once the Court determines whether and to what extent Defendants Felix Joe Martinez Public Trust and Southwest Financial Services, Inc. have interests in the Chimayo property, Volt will have 30 days to file a motion for reasonable attorneys' fees and costs with supporting affidavits and time sheets.  As provided by the Local Rules and the Federal Rules of Civil Procedure, the Martinezes can respond to the motion for reasonable attorneys' fees and costs, and Volt can file a reply.

Also within that 30-day period, (1) the parties must meet and confer and file with the Court a list of no more than three proposed special masters, and (2) Volt must submit a proposed order or judgment of foreclosure with updated calculations on the amounts owed on the Note and applicable expenses as well as language to appoint a special master.

IT IS ORDERED that the Motion is granted in part and denied in part in that

1.  the Martinezes' request to strike Girardeau's affidavits is denied;

2.  Defendant Marie Martinez's request to dismiss the claims against her for lack of personal jurisdiction is denied;

3.  the Martinezes' request to dismiss the claims against Defendant Felix Joe Martinez Public Trust for lack of personal jurisdiction is denied;

4.  Volt's request for an entry of default judgment against Defendants Felix Joe Martinez Public Trust and Southwest Financial Services, Inc. is denied;

5.  summary judgment will be entered in favor of Volt on its claims against Defendants Marie Martinez and Felix Joe Martinez;

6.  entry of an order of foreclosure is deferred; and

7.  once the Court determines whether and to what extent Defendants Felix Joe Martinez Public Trust and Southwest Financial Services, Inc. have interests in the Chimayo property, the parties must file or submit additional papers, as described above, to effect the foreclosure on the Mortgage.

_____
UNITED STATES DISTRICT JUDGE